McCULLEN, STATE LAND COM'R, v. MERCER.

(In Banc. Feb. 23, 1942.)

[6 So. (2d) 465. No. 34897.]

Greek L. Rice, Attorney-General, by Jefferson Davis, Assistant Attorney-General, for appellant.

Geo. M. Ethridge, Jr., of Meridian, Will Estes, of Enterprise, and W. F. Latham, of Quitman, for appellee.

**Roberds, J.,** delivered the opinion of the court.

In 1930 Mercer, being then the assignee and owner of the unexpired part of a ninety-nine year lease of rural sixteenth section school lands in the Choctaw purchase in Clarke County, permitted the same to sell to the state for nonpayment of ad valorem taxes. After the expiration of the period of redemption from this sale, Mercer applied to the State Land Commissioner to purchase these lands. These negotiations continued without the issuance of a patent until 1936, when Mercer, on notice from the land commissioner, made a new application as required by Ch. 174, Laws of Miss. 1936. In December, 1937, the land commissioner returned to Mercer the installment payments he had made because the Governor had not approved the patent. In February, 1939, Mercer filed with the land commissioner another application. In July, 1939, the patent was isssued to Mercer and recorded on the land records of Clarke County. Immediately after the issuance of this patent the land commissioner wrote Mer-

cer he had been advised by the attorney general of Mississippi that this patent was void, because the land commissioner had no authority to sell these lands, and he likewise wrote the chancery clerk of Clarke County instructing him to make the proper notation on his records that this patent had been cancelled, which was done. In September, 1939, the land commissioner returned to Mercer the money he had paid for this patent, which was accepted. Mercer then tried, unsuccessfully, to lease these lands from the supervisors of Clarke County. In March, 1940, the supervisors made a lease of the lands for fifteen years to one McLemore.

Mercer then filed this bill, joining as defendants thereto McLemore, the supervisors and the county superintendent of education of Clarke County, the land commissioner and attorney-general of Mississippi, praying (1) that the land commissioner be required to specifically perform his agreement to issue the patent, (2) for the cancellation of the attempted cancellation of the recorded patent, (3) for removal of the claim of McLemore as a cloud on his title, (4) for an injunction to restrain McLemore from the use and occupation of the lands and from interfering with such use and possession thereof by Mercer, and (5) for an accounting of rents and profits from McLemore. The attorney-general and land commissioner filed a general demurrer to the bill, which was overruled, and an appeal granted therefrom to this court to settle the principles of the case. The other defendants answered, no further action being taken, awaiting the outcome in this court.

Passing over the question (a) whether this form of suit will lie against the attorney general and land commissioner, and (b) whether Mercer, by accepting return of the patent money and his negotiations with the supervisors for a lease under them of the lands, is estopped to now claim under the patent, we go at once to the fundamental question whether, under these facts, Mercer has any valid claim to the lands. This involves the respec-

tive powers of the supervisors and the land commissioner over such lands.

Section 211 of the Constitution of Mississippi confers power upon the legislature to lease, but denies it the power to sell, sixteenth section lands involved in this case. See Chapter 338, General Laws of Mississippi, amending the foregoing section as to certain lieu lands, inserted by the legislature at the current session, and filed with the Secretary of State February 9, 1942.

Section 6759, Code of 1930, carrying out the provisions of Section 211 of the Constitution, provides "none of such lands shall ever be sold, but they shall be leased . . ."

The authority of the supervisors over such lands will be found in the following sections of the Code of 1930:

Section 6760 provides: "The several counties wherein are situated any of such lands have, through their respective boards of supervisors, under the general supervision of the land commissioner, jurisdiction and control thereof, and of all funds arising from any disposition thereof heretofore or hereafter made . . ."; requires such funds to be paid into the county treasuries to be used for purposes of education within the townships in which the lands are located.

Section 6761 authorizes the supervisors to sell timber, sand and gravel from such lands, and to lease them for turpentine and pasturage purposes.

Section 6762 empowers the supervisors, with approval of the governor and attorney general, to lease such lands for oil, gas and mineral exploration and development.

Chapter 272, Laws of Mississippi 1934, page 546, provides: "It is the duty of the superintendent of education of each county with the approval of the board of supervisors, to lease the sixteenth section lands subject to lease and not situated in a city, town or village, by public or private contract, as the board shall direct and for a term it shall direct . . ."

Section 6771 authorizes the supervisors, upon report of

appraisers appointed by them, to lease lands in municipalities.

As to the authority and power of the land commissioner over such lands, section 6011, Code of 1930, after vesting in him authority over other lands, uses this language: ". . . for supervisory purposes the Choctaw school or sixteenth section lands, the lands forfeited to the state for nonpayment of taxes after the time allowed by law for redemption shall have expired, and of all other public lands belonging to or under the control of the state; and the regulation, sale, and disposition of all such lands, except the Choctaw school lands, shall be made through the land office."

Section 6033, Code of 1930, provides: "The land commissioner has only a supervisory power over the Choctaw school or sixteenth section lands; and he shall supply to the boards of supervisors and other interested persons information concerning those lands, and make such recommendations and suggestions as he may deem proper."

Section 4, Chapter 174, Laws of 1936, provides: "The land commissioner with the approval of the governor is hereby authorized to sell any lands which may have been forfeited to the state for the nonpayment of taxes after the time allowed by law for redemption shall have expired . . ."

It is thus seen that the land commissioner has only supervisory power over these lands and that it is now "the duty of the superintendent of education . . . with the approval of the board of supervisors, to lease [them] . . ." if not within a municipality, and if within a municipality the supervisors shall lease them upon report of appraisers appointed by the board for such purpose.

In Hines Yellow Pine Trustees v. State ex rel. Moore, Land Commissioner, 134 Miss. 194, 98 So. 445, 446, this court construed said sections 6019 and 6033 and 6760 (then appearing as sections 2903, 2915 and 4701, Code of 1906), holding that the supervisors did have, and the land

commissioner did not have, authority to maintain an action for statutory and actual damages resulting from the wrongful cutting of trees on sixteenth section lands, saying: "The latter [sixteenth section lands] are separately dealt with by the Legislature, and there seems a clear unmistakable purpose from the statutes on the subject that it was the purpose of the Legislature as between the land commissioner and the boards of supervisors to give the latter jurisdiction and control of the sixteenth section lands, with the right to bring all necessary suits with reference thereto, and to exclude the land commissioner from any jurisdiction or control over said lands, except for the purpose of supplying the boards of supervisors and others interested with information concerning the same, and making such recommendations and suggestions with reference thereto as he may deem proper;" "In short they [the supervisors] are given full jurisdiction and control of the sixteenth section lands . . . ."

But appellee makes the contention that, since these lands were subject to taxation and sale for nonpayment of the taxes, section 3156, Code of 1930, in which case, "only the title of the lessee or his assigns shall pass by the sale," that this sale resulted in the state owning two separate estates in these lands—one the unexpired term of the leasehold and the other the reversion in fee simple—and that the unexpired leasehold was subject to sale by the land commissioner under said section 4, Ch. 174, Laws of 1936. The patent does not purport to limit the estate conveyed thereby to the unexpired leasehold, but assuming that the law would so limit it, the contention has some support in the case of State v. Fitzgerald, 76 Miss. 502, 24 So. 872, where the court held that the land commissioner could maintain a replevin action in the name of the state for cross-ties wrongfully cut from sixteenth section lands, the unexpired leasehold having been purchased by the state at a tax sale. But that case does not decide the question under consideration because (1) the authority to thus sue would not necessarily carry the power in the

commissioner to sell or lease, and because (2) the various statutes conferring and denying authority of supervisors and the land commissioner over such lands have been brought forward, and, in some cases, changed and amended since the decision of that case in 1899, as, for instance, chapter 272, Laws of 1934, making it the duty of the county superintendent of education, with approval of the supervisors, to lease such rural lands.

But the purchase of this leasehold by the state did not result in its owning two separate estates. When this lease was made the state held the fee simple title to these lands. This leasehold carved out of the fee simple title a lesser estate. When the state purchased the unexpired leasehold this lesser estate became merged in the greater estate and the lesser estate was extinguished. "If the leasehold interest and the immediate reversion thereon become vested in the same person or persons . . . the tenant's interest is merged in the reversion . . ." 3 Tiffany Real Property (3 Ed.), Sec. 901, p. 557. The unexpired leasehold, when purchased by the state, was no less sixteenth section school lands than when leased by the state. Whatever obligation may exist on the state as to the beneficial use of the lands does not affect the fact that it has the fee simple title thereto.

The supervisors and county superintendents of education are familiar with the lands in their respective counties; know their nature and condition, and the opportunities for leasing them, and it is readily understood why the legislature might deem these county officials in much better position to properly handle these lands than the land commissioner at Jackson.

The land commissioner had no power to issue the patent to Mercer, and it conveyed to him no interest in the property.

Reversed and remanded.